Good morning, Mr. Hernandez. Good morning, Your Honor. It's a pleasure to see you. You've put on a few pounds since I last saw you. Judge, today is the 35th anniversary since I think the first time I appeared for you in this courtroom almost to the day. I was a young guy then, I guess. I was very young. You didn't seem that young to me back then, though. All right. Your Honor, Your Honors, my name is H. Manuel Hernandez. May it please the Court, I represent Mr. Garcia in this third appeal before this Court. There are numerous issues that have been raised. I only have a limited time, so I'm going to limit my discussion with the Court's permission to my arguments regarding the sufficiency of the evidence and the application of the Supreme Court's decision in Rosemont and this Court's recent decision in Martinez-Rodriguez applying Rosemont to aiding and abetting. If I have a chance, I'll try to get to this discussion on the restitution issue as well. The rest I would ask to leave the Court to submit to on the briefs. This Court, both in both Garcia cases, the Garcia I and Garcia II, recognized that although it's not generally allowed or inclined to review issues a second or third time, the subsequent time that the case comes before the Court, that there are sometimes exceptional circumstances which allow it to do so. And I respectfully submit that this case is, particularly since the Rosemont decision, is one of those exceptional circumstances. In the Rosemont decision, the Supreme Court reviewed the aiding and abetting law and the requirement of knowledge and I won't say significantly changed it, but did change it, requiring that the government's burden of proving knowledge also requires that the defendant be proven to have had sufficient advanced knowledge of what was going on to have had the opportunity to opt out. I would respectfully submit that there was no such evidence in this case and that the jury was not so instructed on this case. And that, in and of itself, I would respectfully submit would provide the Court with the exceptional circumstance it needs to review this particular case under the Rosemont decision. Could you, counsel, could you help me on the, before Rosemont, our test was the test in Medina Roman and as I understood it, it required that you knew to a practical certainty that a firearm would be used in the offense. So how is that not a requirement also for advanced knowledge? Your Honor, well, I think the Supreme Court adopted in many ways this Court's, there was a split between the circuits and I believe the Court actually said that it was adopting the first circuits, one of the circuits, that knowledge. I guess the difference that I see after Rosemont is that requirement that the advanced knowledge be proven, to an extent that the government also has to show that he had that knowledge and the ability to opt out. Again, I would respectfully submit that there simply was not that type of evidence presented in this case. Also, But, counsel, the opt out has to do with advanced knowledge that the co-defendant has a weapon. Yes, Your Honor, and there was no evidence to that and I don't believe that the jury was properly instructed on that. But when you review the evidence, again, I believe the evidence, and I put this in my brief, the evidence, all it showed, and it wasn't raised for some reason, it wasn't necessarily raised in the first appeal. The first appeal dealt with the interstate commerce clause, which was a very light burden for the government to prove and the DNA issue of whether the government actually had enough evidence for the DNA. The issue of mere presence, I don't believe, was properly raised. Since then, when the case went back and the trial court, Judge Dominguez, had an opportunity to resentence, he issued a subsequent order, and in that particular order, and I set it out in my brief at page six, it almost reads like a Rule 29 motion for the defendant. He found that the defendant was not identified as the assailant, that the defendant did not brandish or discharge a gun. Indirectly and by implication, he found that the defendant did not possess the firearm because the only way he was able to show or argue any type of possession or find any type of possession was under constructive possession. He found that he was not the driver because the blood was found in the backseat, and he found that there was no intent to kill the victim. So when you take all of those factors and you look at the evidence that was presented, all they have is mere presence, and the law is very clear that under mere presence, that's not enough. This case, this court, and recently in Martinez-Rodriguez's decision, basically found that and discussed that again and talked about the facts there, which are very similar when you look at those particular facts, to Mr. Rodriguez's situation, at least in terms of the knowledge. In the Martinez-Rodriguez case, Mr. Rodriguez was basically a passenger in a seat. He was driving with his brother-in-law. The police stopped him because the windows were supposedly tinted. They were apparently just coming back from one of the public housing projects where something had happened, and when they found Mr. Rodriguez got out, he's nervous. He walks. The policeman sees him. He walks away, and then they talk to the driver, Mr. Santini, I believe was his name. Ultimately, they find drugs on Mr. Santini, and because of his nervousness, he asked basically Mr. Rodriguez to lift his shirt, and Mr. Rodriguez was possessing a gun. This court reversed those convictions, finding that that was not enough, and said that the government had failed to show how long they had traveled together, other than their relationship, and they were brother-in-laws in that case. There was a familiar relationship. They weren't able to show what they were doing before they got there and how long they had been together. That's pretty much exactly the evidence that we have here. Come back to this case. Let's assume we might agree with you that the evidence was pretty skinny here. That's water over the dam now because the prior panel has sustained the sufficiency of the evidence, so you need something pretty unusual to get us to revisit that. My argument is Rosemont. And I come back to Rosemont because I still haven't heard an answer to my question of why. It seems to say you say Rosemont adopted this circuit's rule that you have to knew the practical certainty that a firearm would be used. If the Supreme Court adopted this circuit's knowledge test, then there's been no substantial change in the law, has there, that would allow us to revisit an earlier decision? I guess, first, I'm somewhat of a disadvantage. I don't recall the case law saying that the government is required to prove that knowledge to a certainty, an aiding and abetting, so I don't believe that that necessarily is what the instruction says and that's necessarily what I could be wrong. Are you suggesting Rosemont changed the law more favorably to the defendant? Yes, clearly. And I've heard you say advanced knowledge, which I'm not seeing how that isn't in Medina Roman. Is there any other way in which you say Rosemont changed the law? I believe Rosemont perhaps heightened the focus on that advanced knowledge that didn't exist before. I don't recall in any of this Court's opinions, frankly, in my 35 years of doing this now and dealing with aiding and abetting all too often, I don't recall that language. I think Rosemont, the language of the ability to opt out, that was new language as far as I can recall. I certainly don't recall any First Circuit opinion that said that. That's the first time the Supreme Court put that in there. I've not had a trial in the circuit, the First Circuit, so I'm not familiar and I didn't look and I should have looked more closely to what the jury instructions are now and whether they used that opt-out language. But I don't deny, Your Honor, that when the Supreme Court was looking at Rosemont, the First Circuit was on the right side of the aiding and abetting instruction. But I think the Supreme Court, and that's why in my briefs I reserved that issue and I made it clear, and I actually said nobody knows what the Supreme Court is going to do in this situation. And then they did what they did. Again, I think reaffirming this Court's knowledge requirement, but adding the, I guess, emphasis on the government has to now show knowledge to the point of whether the defendant had enough sufficient opportunity to opt out. And under the law of mere presence, and I cited numerous examples, many were from the Eleventh Circuit of actually worse facts. And from this circuit, I just don't, that's all they have. If you take away, that's all they had. There was some evidence, and I see my time is about to run out, about which, I don't know how it was possibly admissible other than for background to show how the agents got to Mr. Garcia, that they had information, informant information, absolute hearsay and gossip, basically, that he was involved with this group. And they had a picture of him with one of the victims who actually died. That, I don't believe, would be enough. Just simply having a picture. There was a defense witness who testified he actually worked at that mechanic shop. Counsel, before all of your time runs out, your client was also convicted under a theory of felony murder. So from a practical point of view, even if we were moved to favorably agree with your Roseman argument, what do we do with the felony murder portion? May I answer the question? Your Honor, the felony murder basically says the government still has to prove the underlying felony to get to the felony murder. And they charge the aiding and abetting of the 1951 charge. It's the same thing. They didn't have enough evidence for the felony, so I don't think they get to the felony murder. That's my response, Your Honor. It's the same, basically, standard applied. It just was all they had was mere presence. And that's the error that was done before. And if you look at Judge Dominguez's order at the second sentencing where he was trying to explain why he went from life to 26 years, he kind of went through all the factors of just how weak the evidence was against Mr. Garcia. I once had a case, and I'll sit down. I know I'm pushing my luck here, where I went in and everybody was pleading guilty. We went in chambers with the judge, and I looked at the judge, and the judge asked what my client was going to do. He said he was going to go to trial. And I said, well, why is he going to trial? Well, he says he's innocent, Your Honor. I said, well, if he's innocent, then I'll give him probation. So here, I think that the case against, when you look at all the evidence, again, there's nothing more than mere presence, and that simply is not enough. And with the Rosemont, that gives the court the exceptional circumstances to revisit this and remand it for resentencing. I submit everything else on the briefs. Thank you very much, Your Honor. Ms. Jorgensen, good morning. Good morning, Your Honor. May it please the Court, Susan Jorgensen for the United States. Your Honors, I believe there are three main issues in this case. The first is whether or not the law of the case doctrine should be set aside, and that requires that there be extraordinary circumstances or contravening legal authority. I would submit that there are not extraordinary circumstances in this case and that Rosemont is not contravening legal authority. The second issue is whether or not the sentence imposed was reasonable, and I would submit that it was procedurally correct and substantively reasonable. And then the third issue is whether or not the district court's finding that restitution was required in the third sentencing hearing should be set aside or should be remanded. And I would submit that it should be remanded for a calculation of the proper restitution. The first argument I have is that Rosemont is not contravening legal authority. The most important distinction I think to keep in mind here is that in Rosemont, the jury instructions did not make clear that the jury needed to prove intent for both counts. Here, the jury instructions, I believe, made very clear that the jury needed to prove intent. On count one, the court instructed that the jury needed to knowingly and willfully to find that Garcia knowingly and willfully obtained approximately $60,000 from Ralph's Food Warehouse by means of interference with interstate commerce. And for count two, the court instructed the jury that it needed to find that during and in relation to the commission of that crime, defendant knowingly used or carried a firearm. Then it defined the word knowingly as voluntarily and intentionally, not because of mistake or accident. And it defined to use a firearm as employing the firearm actively, and it gave some examples of how that's done. And it says that the firearm must have played a role in the crime or must have been intended by the defendant to play a role in the crime. So I think that Rosemont doesn't affect this case because I believe that the jury conclusively found, beyond a reasonable doubt, that indeed the defendant did intend that a gun be used during the commission of the crime. What evidence was, you had evidence that he was in the backseat of the car. Correct, Your Honor. Because you found his butt there. That's correct. There was conclusive DNA evidence that he was in the backseat of the car. And you had evidence he knew one of the other guys. That's correct. We had evidence that he knew one of the other gentlemen. What evidence did you have that he knew there was going to be a gun used or that he even knew there was going to be a robbery? Well, Your Honor, I would submit that this was a planned crime. The individuals who perpetrated this crime sat in a Dodge Intrepid outside of Ralph's Food Warehouse waiting for the manager to exit with his cash. They knew the time he was leaving, and they were waiting for him in the car together. I think it's an extremely remote possibility that they were all sitting there innocently talking about YouTube or the weather or some other topic. I think that it stretches the bounds of credulity to suggest that they didn't know that their cohorts had guns. In addition, the witnesses said that they saw two to three individuals in the car, and forensic tests conclusively found that there were indeed three weapons fired at the crime scene. Further, he was known to be consorting with this particular criminal organization that staged robberies of this sort, and he was found with a bullet wound in his shoulder, and there was DNA evidence at the crime scene and in the car. So I think under the felony murder rule, the theory is malice aforethought, and you reach the intent issue in that way. I would also point out that there are two recent decisions by this court. One is United States v. La Russente. I'm not sure if I'm pronouncing that properly, and that was February 17, 2015, a very recent decision. And in that case, this court found that the defendant's plea of guilty was sufficient to establish his intent. And I would submit that the jury's finding after an 11-day trial with proper jury instructions and extensive testimony was also conclusive and also was sufficient to establish intent, much like the case in United States v. La Russente. And specifically in La Russente, there was a footnote, page 5, footnote 2, where this court said that advanced knowledge can include knowledge acquired prior to the commission of a drug trafficking offense or knowledge that is acquired while an offense is in progress. And I would submit while he's sitting there in the car in the Dodge Intrepid, it hardly can be said that he didn't know that guns were going to be used. And so if he didn't know ahead of time, which I think is a very remote possibility, he certainly acquired that knowledge while the offense was in progress. What if the weapons were not being shown or in the belts of the people with the shirt over them? I think by the very nature of the crime, a planned robbery, I think that the individuals had to have discussed the details ahead of time, and I think that all of the circumstantial evidence was presented to the jury and they reached the conclusion beyond a reasonable doubt that he did intend to have a gun. So I think you keep going back to the jury verdict, which was a very thorough trial, and I think it's very difficult to get around that issue. And to find extraordinary circumstances in this case, and I think the two previous panels already thoroughly addressed that issue, and it is established case law at this point. The other case, Martinez-Rodriguez, which defense counsel cites, is actually very easily distinguished, I would submit. In Martinez-Rodriguez, the police officers pulled over a car for a routine traffic stop, thinking that possibly it had tinted windows that were in violation of Puerto Rican traffic laws. When they pulled over the car, the individual in the passenger seat exited, said thank you to the driver, and began talking on his phone, and the police officers thought that this was suspicious behavior. Based on that, they patted down the individuals and they found a gun on this person, it was tucked in his pants and it was not visible, and they found drugs on the driver. I would submit this is a very different case from one as we have here, where the defendants lay in wait for the manager to exit on December 9th, and with guns, fired shots, and attempted to rob him of $60,000 in cash. A routine traffic stop, the individuals, you're pulling them over simply because of tinted windows, it's really nebulous as to whether or not the individual walking away from the car is sufficient cause for patting him down. So I would say that case is definitely distinguished. As to the issue of whether or not the sentencing was procedurally and substantively reasonable, I would also submit that it was indeed procedurally and substantively reasonable. Firstly, I would say as to the procedural issues, the district court, Judge Gonzales, referred several times during the... Judge Gonzales? I'm sorry, Dominguez. My apologies, Your Honor. Referred several times during the third sentencing to his previous two sentencing hearings. So in that way, he was incorporating his reasoning in those sentencing hearings. In addition, I would submit that what is required under Carrillo is that the record shows that there was sufficient evidence considered, that the documents considered by both sides show that the issues were considered, that the judge indicated that he had seen those documents and considered them. And I think that that is the case here, certainly. Indeed, in the first and second sentencing hearings, the judge specifically went over each factor under 3553 and made sure that the counsel had appropriate time to answer each factor and what their position was on that. And I would submit in the third sentencing hearing, the judge perhaps didn't go over sufficiency of the evidence because that was no longer an issue. It had been sent back because 924C was considered to be a lesser included offense in 924J. So the judge didn't really need to go back over the sufficiency of the evidence issue in great detail that had already been determined. He was primarily concerned with what the First Circuit had said was an issue for him. So I would say, therefore, procedurally it was reasonable, and substantively that issue has already been decided by this court. So if the court, if your honors have no questions, there are two ancillary issues I think which I would like to address, which defense counsel brought up repeatedly in his briefs. The first issue is mere presence. And in many of the cases that he cited, mere presence had to do with drug deals where the individual was in the car and his cohort happened to have drugs, and it was unclear whether or not he knew that there was going to be a drug deal going down and he was carrying a gun. In the case of Cirillo, I apologize, Your Honor. It looks like I'm running over time. Do you have any questions for me? You can finish your statement if you want.  In the case of Cirillo, it wasn't indeed a murder, but there was affirmative evidence that the individual was not involved and did not have knowledge ahead of time that the murder was going to occur and that he did not go to the scene and that the murder had already occurred by the time he arrived. So I think that that is easily distinguishable from the incident case. Thank you. Thank you, Your Honor.